Idella MURRAY

v.

Casper WEINBERGER, Secretary of Defense, Appellant.

No. 83–1680.

United States Court of Appeals, District of Columbia Circuit.

Argued 13 April 1984.

Decided 24 Aug. 1984.

Charles Francis Flynn, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Wiley A. Branton, with whom Roma J. Stewart, Washington, D.C., was on the brief, for appellee.

Before WILKEY and WALD, Circuit Judges, and McGOWAN, Senior Circuit Judge.

WILKEY, Circuit Judge:

This is an appeal from an order of the district court awarding attorney's fees to a prevailing plaintiff in a Title VII suit which was brought against the U.S. Secretary of Defense. The appellant contends that the district court abused its discretion by increasing the lodestar figures for the plaintiff's attorneys by 50 to 80 percent for the factors of quality of representation, risk of nonpayment, and delay in payment for the services rendered. We reverse in part, vacate in part, and remand the case to the district court for proceedings consistent with this opinion.

## I. BACKGROUND

In 1975 the plaintiff Idella Murray sued the Secretary of Defense alleging unlawful employment discrimination on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964.[1] She charged that the defendant unlawfully refused to promote her from the GS–13 level that she had occupied since 1970, and she sought promotion to GS–14 retroactively to 1972 and to GS–15 retroactively to 1974. The case was tried in September of 1979. In 1981 the district court entered judgment in favor of the plaintiff and ordered the defendant to promote the plaintiff to GS–14 retroactively to 1973 and to pay her the back pay she would have received if she had been so promoted at that time.[2]

Shortly thereafter, the plaintiff filed a motion for attorney's fees and costs. As amended, the motion for attorney's fees sought $66,287.96 for the chief trial counsel, Roma Stewart; $17,609.00 for attorney Prather Randle, who participated in the

---

1. *Murray v. Weinberger* (D.D.C. 15 Apr. 1983) (mem.), *reprinted in* Joint Appendix (J.A.) at 104–11.

2. *See* J.A. at 5–6. The amount of the back pay was $8,996.00. *See* Brief for Appellant at 2.

first few days of the trial; and $5,791.50 for the post-trial legal work of attorney Ronda Billig.[3] The fee applications proposed awards based on hourly rates for services rendered multiplied by specific multipliers for certain factors. Attorney Stewart sought a multiplier of 1.8 times the basic hourly rate due to the risk of nonpayment of her legal fees and for the delay in payment of fees. Attorney Billig sought a multiplier of 1.5 both for the contingency of payment and for the delay in payment, and attorney Randle sought a multiplier of 1.5 for the contingent nature of payment. Although the defendant disputed a few of the hours and costs claimed by plaintiff's counsel, he principally objected to the hourly rates and multipliers sought by the plaintiff's three attorneys.

In February of 1982 the district court issued an order awarding attorney's fees and costs to the plaintiff to the extent that they were not disputed by either party.[4] Subsequently the defendant asked the district court to require the plaintiff to resubmit the attorney's fees applications to conform with a recently issued decision of this court, which requires an applicant to document the market rates of attorneys in the relevant community.[5] The plaintiff opposed that motion and supplemented her amended motion for attorney's fees by requesting an additional $2,205.63 for counsel's work in connection with the request for attorney's fees.[6]

On 15 April 1983 the district court denied the defendant's motion and held that additional information about the market value of the plaintiff's attorneys was not necessary in this case.[7] In its order, the district court also made a final award for plaintiff's attorney's fees and costs, which totaled $63,159.43, from which amount he deducted the fees previously awarded to the plaintiff by the court's earlier order.[8]

In its final attorney's fees order, the district court calculated a lodestar figure for each attorney by multiplying the prevailing hourly rate for the year in which the services were rendered times the number of hours reasonably expended. The court established the hourly rate for each of plaintiff's attorneys by reference to the prevailing community rates for Title VII litigators of similar experience at that time; the hourly rates were from $55 per hour in 1975 to $100 per hour in 1982.[9] Next the court determined the reasonable number of hours expended by the plaintiff's attorneys by subtracting the number of hours that did not contribute to the resolution of the case or that were unreasonably spent on the preparation of the fee affidavit and petition from the raw total of hours claimed.[10]

The district court then adjusted these lodestar figures to reflect three factors: (1) the quality of representation; (2) the contingency of payment due to the risk of losing on the merits; and (3) delay in payment. The court held that attorneys Billig and Randle each were entitled to a 1.5 multiplier of their lodestar figures to compensate them for contingency and delay and it granted attorney Stewart a multiplier of 1.8 to compensate her for the above average quality of her representation.[11]

## II. ANALYSIS

■ The attorney's fees provision of Title VII permits the district court, in its discretion, to award attorney's fees and costs to a prevailing party. The statute provides:

3. See J.A. at 44, 67.

4. See id. at 85–86.

5. See id. at 104–05 (citing National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319 (D.C.Cir.1982)).

6. See id. at 87, 98.

7. See id. at 105–06.

8. See id. at 110–11.

9. See id. at 106–11.

10. See id. at 108–09.

11. See id. at 109–10.

In any action or proceeding under ... [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.[12]

In *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263, the Supreme Court found that the purpose of awarding attorney's fees from the losing party in civil rights litigation is "to encourage individuals injured by ... discrimination to seek judicial relief" by enabling them to obtain adequate counsel for their meritorious claims.[13] The congressional intent to aid injured individuals by permitting the court to award attorney's fees to the prevailing party in civil rights cases is made clear by the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, which is analogous to the statute applicable in the instant case.[14] The policy of fee-shifting was identified as follows:

It is intended that the amount of fees awarded under ... [this act] be governed by the same standards which prevail in other types of equally complex Federal litigation .... [Application of the] appropriate standards ... have resulted in fees *which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.*[15]

Likewise the Supreme Court stated in *Hensley v. Eckerhart* that the policy of statutory provisions awarding fees to prevailing parties "is to ensure 'effective access to the judicial process' for persons with civil rights grievances."[16] Our analysis of the attorney's fees statute in Title VII, therefore, must be guided by the principle that the purpose of the statute is to benefit meritorious claimants—not to subsidize the legal profession.

### A. The Lodestar Figure

 The starting point in fee-setting under the statute is the computation of the lodestar figure for each fee applicant. In *Copeland v. Marshall* we held that any fee-setting inquiry must begin with the lodestar figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.[17] The reasonable rate is determined by reference to the prevailing market rate in the relevant community according to the Supreme Court's recent decision in *Blum v. Stenson.*[18] The number of hours reasonably expended on behalf of the prevailing party is determined by evaluating the total number of hours expended and disallowing unproductive time or time spent on unsuccessful claims; hours that are "excessive, redundant, or otherwise unnecessary" must be excluded from the lodestar calculation.[19]

In the instant case, it appears that the district court determined the reasonable rate according to the market rate prevailing in the relevant community,[20] and prop-

---

12. 42 U.S.C. § 2000e–5(k) (1982).

13. *Newman v. Piggie Park Enters,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (racial discrimination); *accord Copeland v. Marshall,* 641 F.2d 880, 889 (D.C.Cir.1980) (en banc).

14. 42 U.S.C. § 1988 (1982).

15. S.REP.No. 1011, 94th Cong., 2d Sess. 6 (emphasis added), *reprinted in* 1976 U.S.CODE CONG. & AD.NEWS 5908, 5913.

16. 461 U.S. 424, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.REP. No. 1558, 94th Cong., 2d Sess. 1 (1976)).

17. 641 F.2d 880, 890–91 (D.C.Cir.1980) (en banc); *see also National Treasury Employees*

*Union v. Nixon,* 521 F.2d 317, 322 (D.C.Cir.1975) (suggesting the same approach).

18. ── U.S. ──, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *see also Donnell v. United States,* 682 F.2d 240, 251 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983) (remanding for award of "rates customarily charged" in jurisdiction in which lawsuit was filed).

19. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); *accord Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir. 1980) (en banc).

20. The district court set the basic hourly rate by reference to the historic fees charged in the community when the services were rendered.

erly reduced the total number of hours billed by the number of redundant and unproductive hours expended by counsel. The reasonable hours billed times the market rate produced lodestar figures for each of the three attorneys which were not challenged by the appellant.[21]

## B. *Adjustments to the Lodestar*

■ The lodestar figure of reasonable hours times a reasonable market rate is presumptively a reasonable attorney's fee under the statute. In *Hensley v. Eckerhart* the Supreme Court stated that the lodestar figure should produce "a fully compensatory fee" in any case in which a plaintiff has obtained "excellent results."[22] The recent case of *Blum v. Stenson* reiterates the principle that the product of reasonable hours times a reasonable hourly rate normally provides a reasonable attorney's fee within the meaning of the statute. In *Blum*, the Supreme Court admonished that only in *"exceptional"* circumstances will the lodestar figure produce an unreasonably low fee within the meaning of the statute.[23] Disallowing a 50 percent increase in the lodestar figure in that case, the Court stated that it is a *"rare case* in which an upward adjustment to the presumptively reasonable fee of rate times hours is appropriate."[24]

■ The principle that only rare and exceptional circumstances can justify an upward adjustment of the lodestar places a heavy burden on a fee applicant to justify any increase in the lodestar figure. In *Blum* the Supreme Court squarely held that a fee applicant bears the burden of

proving that an upward adjustment of the lodestar is necessary in order to produce a reasonable fee, and that this burden is satisfied *only* if the applicant makes a *specific claim* for an upward adjustment based on a particular factor. This claim must be supported by "specific evidence" of the need for an enhancement of the lodestar.[25] In that case, the Court reversed an increase in the lodestar which had been awarded by the district court when the fee applicants had introduced no evidence in the record to show that enhancement was necessary in order to provide reasonable attorney's fees. Likewise, in *National Association of Concerned Veterans v. Secretary of Defense*, this court held that an applicant bears a heavy burden of proof to present well-documented claims for any upward adjustment of the lodestar rate. There we held that a fee applicant must provide specific support for any premium which the applicant requests.[26]

■ The district court has a corresponding duty under the statute to explain with particularity why an increase in the presumptively reasonable lodestar figure is necessary in order to provide reasonable attorney's fees. In *Blum v. Stenson*, the Supreme Court insisted that the district court fully articulate the justification for any increase of the lodestar figure in exercising its discretion to make awards pursuant to the statute. There the Court disallowed an increase in the lodestar figure when the district court had failed to explain with particularity exactly why an upward adjustment was essential and had not iden-

---

We suggest below that on remand the court may instead consider using the current hourly rates prevailing in the relevant community as the reasonable hourly rate. *See infra* p. 1433.

21. Attorney Stewart's rates were $55 to $100 per hour for the years 1975 to 1982; her total number of reasonable hours was 357.75. Accordingly, the lodestar figure for this fee applicant was $29,151.75. Attorney Billig's rates were $80 to $95 per hour for 1978 to 1981; her total number of reasonable hours was 32.1. Her lodestar figure was $2,872.50. Attorney Randle's hourly rates were from $85 to $95 for 1979 to 1981; his reasonable number of hours was 62.7, and his

lodestar figure was $3,820.60. *See* J.A. at 110–11.

22. 103 S.Ct. at 1940.

23. 104 S.Ct. at 1548 (emphasis added); *see also National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982).

24. 104 S.Ct. 1550 n. 18 (emphasis added).

25. *Id.* at 1548–49.

26. 675 F.2d 1319, 1323, 1328–29 (D.C.Cir.1982).

tified any evidence in the record showing that particular circumstances warranted the increase in the fee award in that case.[27] Similarly, this court has insisted that the district court conscientiously exercise its discretion to adjust the lodestar and that it clearly explain the reasons for any upward adjustment.[28]

If these strict requirements are satisfied by both the fee applicant and the district court, an upward adjustment of the lodestar figure may be proper. *Hensley v. Eckerhart* recognized that "in some cases of exceptional success an enhanced award may be justified." [29] The factors which may warrant an adjustment of the lodestar were identified by this circuit in *Copeland v. Marshall* to include the following: (1) unusually good representation by counsel, taking into account the level of skill normally expected; (2) the risk that no fee will be paid; and (3) a delay in the receipt of payment.[30]

■ In the instant case, the district court awarded sizable multipliers of the lodestar figure for each of the attorneys based on these three factors. The full extent of the district court's discussion of the adjustments to the lodestar is as follows:

As we have indicated, the lodestar figures may be adjusted to reflect three special factors: a contingent payment program, any delay in payment to counsel and special quality of representation. In this action, the plaintiff is entitled to an adjustment for both delay in payment and the contingent nature of the case.

The plaintiff indicates that only one quarter of counsel fees were guaranteed by the plaintiff. The remaining fees would be paid only if the plaintiff prevailed. Accounting for the semicontingent nature of the fee award, and the

delay the plaintiff has encountered in payment, the lodestar should be adjusted. Attorney Stewart requests a 1.8 multiplier, while attorney Billig finds a 1.5 adjustment appropriate. Upon consideration of the fee petitions, and the cases which have awarded a multiplier in similar situations the court finds that 1.5 is the proper multiplier to adequately compensate both contingency and delay for attorneys Billig and Randle. Attorney Sewart [sic] will be granted the multiplier of 1.8 to compensate her for the above-average quality of her representation in this action.[31]

We note at the outset that the district court failed to specify with particularity the reasons for the upward adjustments of the lodestars or even to indicate what portion of the increases were due to each of the three factors. This lack of specificity is contrary to the directives of the Supreme Court and this circuit and impairs meaningful review of the reasonableness of the fee awards. We remand the case to the district court for it to explain fully the basis for any increase in the lodestars and to indicate which factors are responsible for which percentage adjustment to the lodestar figures.

### 1. Quality of Representation

The district court enhanced the lodestar figure for attorney Stewart based on the above average quality of her representation although it is unclear whether the increase of 80 percent is due solely to the quality of representation or whether it also incorporates the contingency and delay factors. Regardless of this ambiguity, the appellant contends that *any* adjustment to the lodestar for the high quality of representation was an abuse of the district court's discretion.

27. 104 S.Ct. at 1548–50.

28. *See, e.g., National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d at 1323 (quoting *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc)).

29. 103 S.Ct. at 1940; *accord Blum v. Stenson,* 104 S.Ct. at 1548, 1550.

30. *See* 641 F.2d at 892–94; *see also National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d at 1328 (reading *Copeland* as authorizing adjustment of the lodestar based on the three factors itemized in text).

31. J.A. at 109–10 (footnote omitted).

In *Copeland v. Marshall* this circuit stated, in effect, that the reasonable hourly rate which is incorporated into the lodestar figure generally reflects the reputation and ability of the attorney, the attorney's experience, and the level of skill required for the particular case.[32] *Blum v. Stenson* and *Hensley v. Eckerhart* also held that an attorney's quality of representation typically is reflected in the lodestar figure and that, therefore, an upward adjustment for the high quality of services rendered is justified *only in rare, exceptional* cases.[33] Likewise, in *Donnell v. United States* this court admonished: "We have found it all too common for the district courts to adjust the lodestar upward to reflect what the courts view as a high level of quality of representation. This trend should stop."[34] Only in the rare case of exceptional success is an enhancement of the lodestar proper for above average quality of representation.

Furthermore, the Supreme Court and this circuit have repeatedly held that a fee applicant bears a heavy burden when seeking an enhancement of the presumptively reasonable lodestar figure. As noted above, the applicant must *specifically* claim an adjustment based on a particular factor and must support that claim with evidence submitted in the record, such as affidavits or other documentation. In addition, the district court must fully explain any enhancement of the presumptively reasonable rate based on factors such as the quality of representation.[35]

The district court abused its discretion in this case by awarding an enhancement based on quality of representation when the requirements set forth in *Blum, Copeland,* and *National Association of Concerned Veterans* had not been met. In the instant case, attorney Stewart did not claim any increase of the lodestar figure based on the quality of her representation, nor did she introduce affidavits or other record evidence in support of any such claim. In addition, the district court failed to explain why this was one of the rare and exceptional cases in which an upward adjustment of the presumptively reasonable rate was warranted for the quality of representation. Accordingly, the judgment below is reversed insofar as the fee award for attorney Stewart was increased for the quality of her representation.

### 2. The Risk of Nonpayment

The district court enhanced the lodestar figures of attorneys Billig and Randle (and also perhaps of attorney Stewart) to account for the contingent nature of payment due to the risk of losing the case and therefore of not receiving an award for attorney's fees under the statute. All three fee applicants claimed upward adjustments based on the risk that they would not be fully compensated if the plaintiff did not prevail on the merits of her claim.

The Supreme Court has not decided whether an upward adjustment of the lodestar figure based on the risk of nonpayment is ever permissible pursuant to attorney's fees statutes such as the one applicable here. In the recent decision of *Blum v. Stenson* the Court was careful to note that it has *not* held that the risk of nonpayment may properly be considered in an award of attorney's fees to a prevailing party pursuant to a fee-shifting statute. There the Court stated: "We have no occasion in this case to consider whether the risk of not being the prevailing party ... and therefore not being entitled to an award of attorney's fees from one's adversary, *may ever justify* an upward fee adjustment."[36] Adjustment of the attorney's fees to compen-

---

**32.** *See* 641 F.2d at 889–91.

**33.** *See Blum v. Stenson,* 104 S.Ct. at 1549; *Hensley v. Eckerhart,* 103 S.Ct. at 1940.

**34.** 682 F.2d 240, 254 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

**35.** *See supra* p. 1428.

**36.** 104 S.Ct. at 1550 n. 17 (emphasis added).

sate for the risk of nonpayment if the party should lose on the merits may be inconsistent with the statute's mandate that only a *prevailing* party may be awarded reasonable attorney's fees. That statutory requirement was strictly construed by the Supreme Court in *Hensley*, where the Court excluded legal services rendered in connection with unsuccessful claims from the calculation of attorney's fees awarded to a plaintiff who prevailed on certain other claims brought in the same action. The Court stated:

> The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.... Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.[37]

Awarding an upward adjustment to the lodestar for the risk of losing and the concomitant risk of not obtaining an award of attorney's fees is not unlike compensating an attorney for unsuccessful claims; it hedges the statute's requirement that only prevailing parties may recover attorney's fees.

 Whether or not an upward adjustment for the risk of loss ultimately is determined to be a proper reason for increasing the lodestar pursuant to an attorney's fees statute, this circuit has set forth minimum requirements that must be met in order to justify an increase in the lodestar figure due to the risk of nonpayment if the client does not prevail. In *Copeland v. Marshall* we stated that the risk that no fee will be obtained if the client does not prevail may warrant an increase in the lodestar figure only under certain circumstances.[38] The upward adjustment is not proper when: (1)

the lodestar itself comprehends an allowance for the contingent nature of fee payment; or (2) the fee applicant bore little or no risk of nonpayment because of a fee arrangement with the client; or (3) the case is not exceptional within the meaning of *Blum v. Stenson.*

 We turn first to the issue of whether the risk of nonpayment is incorporated into the market-based hourly rate used to calculate the lodestar figure. All lawsuits have a risk of nonpayment attached to them. As we noted in *Copeland v. Marshall*, every attorney faces a risk of not getting paid for some of the work expended on behalf of a client, because, for a variety of reasons, not all hours worked are billed and recouped by an attorney. The hourly rates which attorneys charge reflect the fact that a certain number of hours rendered will not generate any legal fees. The market-based hourly rate which is incorporated into the lodestar figure therefore includes an increment for the normal risk of not being paid for some of the hours that an attorney expends. Thus, an enhancement of the lodestar figure for the risk of nonpayment is not proper if the risk of nonpayment in the particular case is the same as it is in the average case in the relevant market.[39]

Second, a fee arrangement with a client may substantially reduce the attorney's risk of nonpayment. In *Donnell v. United States* we noted that the terms of any fee arrangement with the client are highly relevant to a determination of the risk of nonpayment and hence to the propriety of an enhancement.[40] In the instant case, it appears that at least one of the attorneys— attorney Stewart—had a fee arrangement with the client guaranteeing payment of one quarter of counsel fees regardless of the outcome of the case. Attorney Billig may also have had a fee arrangement with the client which appears to have provided

---

**37.** 103 S.Ct. at 1940, 1941 (footnote omitted).

**38.** 641 F.2d at 893.

**39.** *Cf. National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1328–29

(D.C.Cir.1982) (discussing adjustments for delay in payment).

**40.** *See* 682 F.2d 240, 254 (D.C.Cir.1982), *cert. denied*, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

that the plaintiff would be billed at $50 per hour for the services rendered.[41] Neither the record on appeal nor the district court's opinion indicates the nature of any fee arrangements the plaintiff may have had with attorney Randle. On remand, the district court should assess the fee arrangements between the plaintiff and each of her attorneys in order to determine the risk of nonpayment for each of the attorneys in this case.

Third, an upward fee adjustment to compensate for the risk of losing—if ever appropriate (and *Blum* did not decide that it ever would be appropriate)—is permissible only in an exceptional case. The district court, contrary to the admonitions of *Blum* and this court, failed to explain why this case is one of those rare cases in which enhancement of the presumptively reasonable lodestar is necessary to facilitate the filing of meritorious claims. On remand, the district court should analyze the risk of loss in this case and award an increase in the lodestar only if this is an exceptional case within the meaning of *Blum.*

### 3. Delay in Payment

In addition to the contingency factor, the multipliers of the lodestar figures awarded to attorneys Billig and Randle (and perhaps for attorney Stewart) were also based on the factor of delay in payment of attorney's fees to counsel. Appellant challenges this upward adjustment for delay on the ground that it is equivalent to an award of interest against the government, which is impermissible in the absence of an express waiver of sovereign immunity. Appellants note that an award of pre- or post-judgment interest payable by the United States is prohibited in the absence of an express waiver of sovereign immunity,[42] and that this court has applied that principle to prohibit prejudgment interest

against the government for back pay awards under Title VII.[43] The appellants contend that the attorney's fees provision of Title VII does not contain an express waiver of sovereign immunity and, therefore, an upward adjustment to compensate the attorneys for delay is prohibited.

This circuit's opinion in *Copeland v. Marshall* indicates that delay in payment may be an appropriate justification for an increase in the lodestar figure, although no adjustment was claimed or granted on that basis in that case. There we stated:

> The delay in receipt of payment for services rendered is an additional factor that may be incorporated into a contingency adjustment. The hourly rates used in the "lodestar" represent the prevailing rate for clients who typically pay their bills promptly. Court-awarded fees normally are received long after the legal services are rendered. That delay can present cash-flow problems for the attorneys. In any event, payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable. A percentage adjustment to reflect the delay in receipt of payment therefore may be appropriate.[44]

The district court's opinion in the instant case does not explain the delay adjustment it granted to plaintiff's attorneys,[45] and it is therefore contrary to the directives of *Blum, National Association of Concerned Veterans,* and *Copeland.* On remand the district court should make two inquiries. First, the court should determine whether the hourly rates incorporated into the lodestar figures for plaintiff's attorneys contain increments for the delay in payment that was expected in this case.

---

**41.** *See* J.A. at 109; *Memorandum in Support of Plaintiff's Supplemental Motion for Attorney's Fees,* J.A. at 71.

**42.** *See Holly v. Chasen,* 639 F.2d 795, 796–97 (D.C.Cir.) (per curiam), *cert. denied,* 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981).

**43.** *See Blake v. Califano,* 626 F.2d 891, 893–95 (D.C.Cir.1980).

**44.** 641 F.2d at 893 (citation and footnote omitted).

**45.** *See* J.A. at 73–74.

The basic hourly rate used in the lodestar figure was the rate prevailing in Title VII litigation, where lengthy delays often attend the payment of attorney's fees. The basic hourly rate incorporated into the lodestar may have included a component for the delay which would have been expected in the payment of fees in this case. According to the fee applicants' affidavits submitted to the district court, the attorneys' hourly rates for billing concurrently with the services rendered were substantially lower than the rates they charged pursuant to awards for attorney's fees under fee-shifting statutes, where lengthy delays are typically expected.[46] The difference in the hourly rates may at least partially reflect the differences in the time of payment for services rendered. Thus the lodestar figures may already include adjustments for delay in payment.

Second, if the district court determined that the reasonable hourly rate incorporated into the lodestar did not reflect an increment for the expected delay in payment, it may properly consider whether recalculation of the lodestar utilizing current market rates instead of historic rates, is appropriate. If the delay factor is reflected in the lodestar figure itself, an additional enhancement for delay would not be appropriate in this case.

The current market rates of the relevant legal community may approximate the value today of the historic rates charged at the time when the legal services actually were rendered. Using current market rates to calculate the lodestar figure may counterblance the delay in payment as well as simplify the task of the district court. Ease of administration is an important objective under the statute because there is a pressing need for simple rules in attorney's fees cases.[47] Current market rates have been used in numerous cases to calculate the lodestar figure when the legal services were provided over a multiple-year period and when use of the current rates does not result in a windfall for the attorneys.[48]

On remand, if the district court determines that the historic rates used in calculating the lodestars do not adequately compensate the plaintiffs for the expected delay in receipt of payment, it may consider whether the use of current market rates would produce a reasonable fee in this case without generating a windfall for the plaintiff's attorneys. If the district court recalculates the lodestar figure to incorporate current rates, then an enhancement of the lodestar to account for delay is not appropriate in this case. In *Copeland v. Marshall* we stated that an increase for delay is generally *not* appropriate "if the 'lodestar' itself is based on *present* hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered."[49] Likewise, we noted in *National Association of Concerned Veterans v. Secretary of Defense* that "where the hourly rate used in computing the lodestar is based on present hourly rates a delay factor has implicitly been recognized and no adjustment for delay should be allowed."[50] The principle stated in these two decisions applies to the instant case.

### III. CONCLUSION

We reverse the district court's order insofar as it granted an increase in the lodestar figure to attorney Stewart on the basis of the quality of her representation. We also hold that the district court failed adequately to analyze and compute adjust-

---

**46.** For example, attorney Billig stated that she billed the plaintiff at a rate of $50 per hour at the time the services were rendered; her lodestar hourly rates ranged from $80 to $95. *See* J.A. at 71, 111.

**47.** *See Donnell v. United States,* 682 F.2d 240, 251 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *Copeland v. Marshall,* 641 F.2d 880, 896 (D.C.Cir.1980) (en banc).

**48.** *See, e.g., Environmental Defense Fund v. Environmental Protection Agency,* 672 F.2d 42, 58 & n. 11 (D.C.Cir.1982); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 395, 402 (D.D.C.1978).

**49.** 641 F.2d at 893 n. 23.

**50.** 675 F.2d at 1329 (citation omitted); *accord Donnell v. United States,* 682 F.2d at 254.

ments based on the factors of contingency and delay in payment. Accordingly, we vacate the awards and remand the case to the district court for proceedings consistent with this opinion.

*So ordered.*