**Frank B. HUBBY, M.D., Plaintiff,**

v.

**HISTORIC SAVANNAH FOUNDATION, INC.; Georgia Endowment For the Humanities, Inc.; Georgia Semiquincentenary Commission, Defendants.**

Civ. A. No. 483–066.

United States District Court, S.D. Georgia, Savannah Division.

Jan. 17, 1985.

Frank B. Hubby, pro se.

John Simpson, Savannah, Ga., Gregory Blount, Asst. Atty. Gen., Joseph Jacobs, James T. Langford, Atlanta, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

Presently before this Court are the motions of defendants, the Historic Savannah Foundation, Inc. ("HSF"), the Georgia Endowment for the Humanities, Inc. ("GEH"), and the Georgia Semiquincentenary Commission ("GSC"), for attorney's fees and costs against plaintiff, Dr. Frank B. Hubby. Although originally brought as a request for a temporary restraining order, this action later was converted by plaintiff into a claim for more permanent equitable relief pursuant to 42 U.S.C. § 1983. These motions mark the postscript to the long, tedious and futile litigation conducted by Hubby in his pursuit for what he claimed to be vindication of his constitutionally protected right to be heard. Having been defeated at every point in his campaign, the time has come for Dr. Hubby to pay the piper.

The Court has read and considered the plethora of pleading materials and briefs which have come before it and has concluded that the motions should be sustained and that attorney's fees and costs should be assessed against Dr. Hubby. What follows is an overview of the tortuous path followed by this two-year suit from its inception.

## BACKGROUND

In February of 1983, HSF, a Georgia corporation formed under the laws of the State of Georgia, planned to hold several events in honor of the state's semiquincentenary anniversary. Among these events were two "Colonial Town Meetings" to be held during "Georgia Week" in Savannah beginning Sunday, February 6, 1983, and ending Sunday, February 13, 1983. At these meetings, citizens of and visitors to Savannah were encouraged to meet and

converse with actors cast as representative characters out of Georgia's historic past. The invitations to these meetings indicated that such notable historical figures as James Oglethorpe, John Martin Boltzius and Samuel Nunes would be present to lead the meetings. The invitations made it quite clear that these meetings were to be limited to theatrical performances to be followed by a short and informal question-and-answer period.

In anticipation of these events, Dr. Hubby had prepared a statement which he desired to recite at one of the productions. His remarks were aimed largely at many of the contemporary problems confronting Savannah, at times with graphic specificity. Plaintiff offered a draft of his remarks to the producers of the "Town Meeting." Apparently, plaintiff's offer initially was accepted by certain unspecified employees of the defendants but then later rejected. The record makes certain, however, that although the organizational staff declined to include Dr. Hubby's speech in either of the meetings, the defendants in no way barred plaintiff from participating in the open question-and-answer sessions following the presentation by the colonial actors.

After his request to deliver a speech at these Town Meetings had been officially rejected, Dr. Hubby filed a complaint with this Court on Friday, February 11, 1983, seeking a temporary restraining order. Plaintiff alleged that, by prohibiting him from delivering his speech, defendants abridged his First Amendment right to be free to express his views at the meetings. On Saturday, February 12, 1983, this Court held a special hearing in which Dr. Hubby was permitted to air his views *in extenso.* For forty-five minutes plaintiff conducted "an impassioned, eloquent, cohesive and appealing ... argument in which he set forth the substance of his suppressed speech—essentially, a political polemic on the sad state of the current local government, charged to be not only oblivious to but betraying the spirit of the founders of the Colony." Order on Application for a Temporary Restraining Order, S.D.Ga. CV 483–066, at 4 (filed February 16, 1983). After

hearing all the evidence, the Court entered its oral Order denying plaintiff's complaint for a temporary restraining order. *Id.*

The final events of "Georgia Week" in Savannah ended the next day on Sunday, February 13, 1983. Nevertheless, plaintiff prosecuted his appeal during the following week to the United States Court of Appeals for the Eleventh Circuit for an emergency hearing on the denial by this Court of plaintiff's request for extraordinary relief. On February 23, 1983, the Eleventh Circuit refused to disturb that denial of relief. Thereafter, plaintiff sought an emergency review by the United States Supreme Court, but his request was denied summarily by Justice Powell in a memorandum decision on March 3, 1983.

On March 7, 1983, plaintiff returned to this Court seeking equitable relief of a more permanent nature. More specifically, plaintiff requested a jury trial and oral argument on all motions brought pursuant to his complaint for injunctive relief filed February 11, 1983. In response, defendant GSC moved to dismiss plaintiff's complaint on the following grounds: (1) the complaint failed to state a claim upon which relief could be granted; (2) the issues presented in this case were already mooted by the conclusion of the Georgia semiquincentenary celebration; and, (3) plaintiff failed to effect proper service of process pursuant to Fed.R.Civ.P. 12(b)(1). Defendants HSF and GEH each filed its own independent motion to dismiss, and the Court held a hearing on these motions on March 24, 1983.

On May 5, 1983, the Court denied defendants' motions. In rejecting defendants' mootness argument, the Court construed plaintiff's *pro se* complaint liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 404 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), and concluded that the plaintiff had requested more than the mere equitable relief identified by the defendants in their briefs. In fact, plaintiff had demanded that he receive "such other and further

relief as this Court deems equitable and appropriate." Plaintiff's Complaint at 5 (filed February 11, 1983). The Court interpreted this phrase to mean that plaintiff's prayer encompassed a claim for damages for the alleged infringement of his First Amendment rights and denied the defendants' motions on this ground.

With regard to defendants' Rule 12(b)(6) assertion, the Court applied the *Conley v. Gibson,* test in finding that plaintiff had offered a set of facts to support his claim that the "Colonial Town Meeting" was a public forum affording him a First Amendment right to express his views at the meeting. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957). Finally, the Court rejected the defendants' motion to dismiss based on inadequate service of process because plaintiff had corrected any deficiency which may have occurred.

Then, on August 15, 1983, after months of discovery, plaintiff moved this Court for leave to file an amended complaint so as to claim damages for violation of his civil rights under 42 U.S.C. § 1983. The Court granted plaintiff's motion two days later on August 17. Two weeks later, on August 31, 1983, plaintiff again sought leave from this Court to amend his pleadings so as to name B.H. Levy, the Chairman of the GSC, as a codefendant. Finding that the addition of Levy to these proceedings at that point did not in any material way alter the posture of the case, the Court acceded to plaintiff's request shortly thereafter. Order of September 6, 1983. On September 16, plaintiff sought leave for the third time to add as defendants all individual members of the above-named commissions and corporations. In this instance, however, the Court refused to permit the addition of the other 24 members of the Commission as defendants. Noting that plaintiff had brought his motion "on the very eve of scheduled pretrial conferences," the Court stated that granting plaintiff's motion "would...burden the defense with more than substantial preparation for trial." Order of September 30, 1983, at 2. Furthermore, because discovery had been closed for some time by operation of Local Rule 7, the Court refused to "tolerate the haphazard disruption of its calendar to accommodate the unduly delayed pleading efforts of the plaintiff." *Id.*

In the meantime, all the defendants moved this Court for summary judgment and on October 4, 1983, the Court heard oral argument of these outstanding motions. In ruling on these motions, the Court addressed three issues: (1) whether the GSC or any of its members were involved in the "Colonial Town Meetings" in their official capacities sufficiently to characterize the meetings as being state action; (2) whether the GEH and the HSF, or their respective members, may be held liable under § 1983 for their actions during the Savannah meetings; and, (3) whether the presentation of the "Colonial Town Meetings" created a public forum supporting legal recognition of plaintiff's First Amendment rights. Upon consideration of the various roles each defendant played in the presentation of the Town Meetings, the Court concluded that defendants were not acting pursuant to state direction, as an agent of the state or otherwise "under color of state law" when plaintiff's request to give a speech at those meetings was denied. The Court further held that plaintiff suffered no denial of his civil rights under § 1983 because the Town Meetings did not present a constitutionally protected forum in which the plaintiff was guaranteed the right to exercise his First Amendment privilege to freedom of speech. More specifically, the Court found that the HSF had imposed permissible restrictions on the conduct of speech at the historical reenactment of a colonial town gathering by excluding those prepared remarks by the audience which were inconsistent with the theatrical nature of the presentation. Order of November 23, 1983, at 9–10; *see also Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (a state may limit a private individual's otherwise permissible First Amendment right to freedom of speech with reasonable restrictions as to the time, place and manner of presentation). Ac-

cordingly, on November 23, 1983, the Court sustained defendants' motions for summary judgment.

On November 29, 1983, plaintiff filed a notice of appeal requesting a hearing *en banc* before the Eleventh Circuit Court of Appeals. On May 2, 1984, a panel of the Eleventh Circuit summarily denied plaintiff's appeal and costs were taxed against him. On July 13, 1983, this Court made the judgment of the Court of Appeals the judgment of the Southern District of Georgia. Thereafter, Hubby's petition for *certiorari* was denied by the United States Supreme Court.

In the interim, all defendants in this action moved the Court for an award of attorney's fees and costs. Since that time, the parties have engaged in a seemingly endless colloquy producing more than thirty-five pleading materials on these and related issues. Having reviewed the entire record again, the Court now finds the matter ripe for disposition.

## DISCUSSION

All three defendants have moved for a fee award pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. GEH has also prayed for an award of attorney's fees against plaintiff acting as counsel. To reach this result, GEH invokes the Court's inherent power to assess fee awards against counsel, *see Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), and the statutory authority granted this Court under 28 U.S.C. § 1927. Finally, GEH has also requested enhancement of 50% in the calculation of any attorney's fee it is owed.

The Court, having concluded that Dr. Hubby is liable for a fee award under § 1988, finds it unnecessary to determine plaintiff's potential liability under alternative theories.

## A. Dr. Hubby's § 1988 Liability

■ The Civil Rights Attorney's Fees Awards Act of 1976 provides federal courts with authority to grant prevailing parties in civil rights actions a reasonable attorney fee as part of the cost of litigation:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. It has become well established that a prevailing defendant[1] in a civil rights action may be awarded attorney's fees only when the plaintiff's claim is "frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978); *see also Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163, 173 (1980); *Roadway Express, Inc. v. Piper, supra; Beard v. Annis*, 730 F.2d 741 (11th Cir. 1984); *B & J Music Inc. v. McAuliffe*, 719 F.2d 1536 (11th Cir.1983); *E.E.O.C. v. Pet Inc., Funsten Nut Division*, 719 F.2d 383 (11th Cir.1983); *Doe v. Bushbee*, 634 F.2d 1375 (11th Cir.1982); *Greyhound Lines, Inc. v. Cobb County, Georgia*, 681 F.2d 1327 (11th Cir.1982); *Church of Scientology of California v. Lazares*, 638 F.2d 1272 (5th Cir.1981); *Jones v. Dealers Tractor and Equipment Co.*, 634 F.2d 180 (5th Cir.1981); *Harris v. Plastic Manufacturing Co.*, 617 F.2d 438 (5th Cir.1980); *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300 (5th Cir.1980); *EEOC v. First Alabama Bank of Montgomery N.S.*, 595 F.2d

---

1. In contrast, prevailing plaintiffs in civil rights actions typically are permitted fee awards unless "special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1763, 1766 (1968) (class action brought under Title II of the Civil Rights Act of 1964, § 204(a), 42 U.S.C. § 2000a–3(a)). *See also*

*Roadway Express, supra,* where the Supreme Court suggested that the distinction between plaintiffs and defendants "advances the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation." *Id.* at 762, 100 S.Ct. at 2462, 65 L.Ed.2d at 498.

541 (5th Cir.1979); *Lopez v. Aransas County Independent School District*, 570 F.2d 541 (5th Cir.1978).

The *Christiansburg* standard has been held applicable to claims arising under § 1988 for attorney's fees. *Jones v. Dealers Tractors and Equipment Co., supra; Crawford v. Western Electric Co., Inc., supra; Lopez v. Aransas County Independent School District, supra.* See also S.Rep. No. 1011, 94th Cong., 2d Sess. 2, 2–4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910–12. Defendants in this action are, therefore, entitled to an award of attorney's fees if, without regard to the existence of subjective bad faith on the part of the plaintiff,[2] the action initiated was "frivolous, unreasonable, or without foundation."

In applying this standard, the *Christiansburg* Court admonished district courts to:

> resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not prevail ultimately, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed.2d at 657. Although acknowledging the need to deter meritless litigation, the Supreme Court nevertheless was concerned that assessing counsel fees against plaintiffs would "substantially add to the risks inherent in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." 434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed.2d at 657. *Cf. Roadway Express*, 447 U.S. at 752, 762, 100 S.Ct. at 2462, 65 L.Ed.2d at 488, 498 (prevailing plaintiff-defendant distinction "advances the Congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation.")

Consistent with the Supreme Court's admonitions, this Court in the past has been reluctant to exercise its authority under § 1988 to grant prevailing defendants counsel fees in civil rights actions. *See, e.g., Daniels v. Motel Properties, Inc., et al.*, No. CV 283–195 (S.D.Ga., August 27, 1984) (Order denying attorney's fees to prevailing defendants in a Title VII suit); *Pasley v. The City of Jesup, Georgia, et al.*, No. CV 283–176 (S.D.Ga., August 7, 1984) (Order denying attorney's fees to defendants in § 1983 action); *Jones v. Gilman Paper Company, et al.*, No. CV 283–006 (S.D.Ga., July 12, 1984) (Order denying defendants a fee award in a Title VII suit). Unlike these cases, the record in the case *sub judice* provides overwhelming factual support for an award of fees against the plaintiff.

Dr. Hubby has struggled tooth and nail in his quest to be heard. He has endeavored to invoke nearly every channel of relief available to him, including a request for an emergency review by the United States Supreme Court and a rehearing *en banc* by the Eleventh Circuit Court of Appeals. His persistence has been undying and his determination as strong and as confident as when he issued his first diatribe before this Court on a Saturday morning nearly two long years ago.

Dr. Hubby, an undergraduate of Princeton and a graduate in medicine of the University of Virginia, is a highly intelligent

---

**2.** The *Christiansburg* Court noted that if "a plaintiff is found to have brought or continued ... a claim in *bad faith* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." 434 U.S. at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657 (emphasis in original).

professional man. His ingenuity is amply demonstrated by his ability to protract this lawsuit for as long as he did without any formal legal training or counsel. As an intelligent learned man, however, Dr. Hubby must have known that his quest to be heard could be pursued only at substantial cost. In fact, Dr. Hubby, as a practicing physician, is aware that professional services generally are rendered only for a considerable fee. While he proceeded *pro se,* and thus incurred no legal fees, his unwilling victims have expended a great deal of time, energy and money in the defense of this action.

Dr. Hubby blatantly has disregarded the cost of his litigious exercise to both the defendants and to society. Long after the time had passed when Dr. Hubby could have obtained the relief he sought—*viz.,* injunctive relief requiring defendants to allow him to be heard at the Colonial Town Meetings—he nevertheless pressed on with his lawsuit. Construing plaintiff's complaint liberally, as the Court must in a *pro se* case, the Court permitted Dr. Hubby a reasonable period of time in which to initiate this action and conduct any necessary discovery. But, at every juncture along the way, plaintiff found ways to prolong the case, thereby creating even greater litigation costs.

Shortly after his complaint had been filed, it should have become clear to plaintiff that this action was "frivolous, unreasonable, [and] without foundation." Plaintiff's complaint invited the Court to ignore reasonable restrictions on the conduct of speech at a theatrical reenactment of a colonial town gathering and hold that the defendants intended to create an open forum at those meetings. In granting defendants' motion for summary judgment, the Court found that plaintiff "[had] not been foreclosed from presenting his views to the public; he merely was not allowed to interject them into a presentation of his own choosing." Order of November 23, 1983, at 10.

In sum, it must have been apparent to Hubby shortly after the commencement of his claim that his pursuit was plainly an exercise in futility. Doubtless, his claim was "frivolous, unreasonable or without foundation" even though not brought in subjective bad faith.

For these reasons, the Court concludes it prudent in this case to award the defendants a reasonable fee pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Defendants' motion for attorney's fees with regard to this statutory provision will, therefore, be granted.

**B. Costs and Attorney's Fees to be Awarded**

**1. Lodestar Analysis**

The only issue which remains for the Court involves the computation of the costs and fees to be awarded to the defendants. In determining the amount of defendants' fee award, the Court is guided by recent Supreme Court and appellate decisions construing the reasonable fee provision of § 1988. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Murray v. Weinberger,* 741 F.2d 1423 (D.C.Cir.1984); *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir. 1984); *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (*en banc*).

In *Hensley v. Eckerhart, supra,* the Supreme Court held that any fee-setting inquiry must commence with the "lodestar figure," an amount equal to the number of hours reasonably expended multiplied by a reasonable hourly rate. 76 L.Ed.2d at 50; *accord Murray v. Weinberger, supra,* at 1427; *Copeland v. Marshall, supra,* at 890–91. The number of hours reasonably expended on behalf of the prevailing party is the total amount of hours minus any unproductive time spent on unsuccessful claims—hours which are "excessive, redundant, or otherwise unnecessary." *Hensley,* 103 S.Ct. at 1040, 76 L.Ed.2d at 51; *Murray, supra,* at 1427; *Copeland, supra,* at 891. The reasonable hourly rate may be

determined according to the prevailing market rate in the relevant community. *Blum*, 104 S.Ct. at 1547, 79 L.Ed.2d at 901–03; *Murray, supra*, at 1427. According to the Supreme Court, this "lodestar figure" should produce "a fully compensatory fee" in any case in which "excellent results" were obtained. *Hensley*, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. *Accord Blum v. Stenson*, 104 S.Ct. at 1058, 79 L.Ed.2d at 901 (the " 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of the statute [42 U.S.C. § 1988]"), *citing Hensley v. Eckerhart, supra*.

The *Hensley* Court also noted that the calculation of the lodestar "does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward...." 103 S.Ct. at 1940, 76 L.Ed.2d at 51. In some cases of "exceptional success an enhanced award may be justified." 103 S.Ct. at 1940, 76 L.Ed.2d at 52. Recently, however, the Supreme Court retreated somewhat in *Blum v. Stenson, supra*, stating that it is "the rare case in which an upward adjustment to the presumptively reasonable fee of rate times hours is appropriate...." 104 S.Ct. at 1550 n. 18, 79 L.Ed.2d at 903 n. 18.

The *Blum* holding exacts "a heavy burden on a fee applicant to justify any increase in the lodestar figure," *Murray, supra*, at 1428; *see Blum v. Stenson*, 104 S.Ct. at 1548–49, 79 L.Ed.2d at 901 (the "burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant"), and this burden is satisfied only if the applicant makes a specific claim for an upward adjustment based on a particular factor. 104 S.Ct. at 1548–49, 79 L.Ed.2d at 901. The United States Court of Appeals for the District of Columbia Circuit has construed the *Blum* holding to suggest that such claims "must be supported by 'specific evidence' of the need for an enhancement of the lodestar." *Murray, supra*, at 1428. Thus, in *Blum*, the Supreme Court reversed a district court's grant of an enhancement of the lodestar because the fee applicants had introduced "no evidence supporting an upward adjustment to fees calculated under the basic standard of reasonable rates times reasonable hours." 104 S.Ct. at 1450, 79 S.Ct. at 901. *See National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1323, 1328–29 (D.C.Cir.1982) (fee applicant must provide specific support for any upward adjustment of the lodestar rate which the applicant requests).

Should the district court determine that such an increase is warranted, then it may rely on such factors as the results obtained by the prevailing party, *Hensley v. Eckerhart*, 103 S.Ct. at 1940, 76 L.Ed.2d at 51, or any of the other twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), in reaching the correct amount of fees to be awarded.[3] Because this Court does not feel that such an enhancement is warranted in this instance, no adjustment to the lodestar will occur. Nonetheless, the Court has outlined the *Johnson* factors and has followed the procedural requirements mentioned in *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *accord Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327, 331 (11th Cir.1982), in reaching the same conclusion.[4]

**3.** The Supreme Court in *Hensley v. Eckerhart* noted that many of the *Johnson* factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51, *citing Copeland v. Marshall*, 641 F.2d 880, 890 (D.C.Cir.1980) (*en banc*).

**4.** Prior to the recent Supreme Court decisions in *Blum v. Stenson, supra*, and *Hensley v. Eckerhart, supra*, the old Fifth Circuit Court of Appeals had suggested that district courts should pay special attention to four particular factors in the *Johnson* analysis when computing a fee award. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 585 (5th Cir.1978); *Mitchell v. Scheepvaart Maatschappij Trans-Ocean*, 579 F.2d 1274 n. 10 (5th Cir.1978); *Matter of First Colonial Corp. of America, supra*, at 1299–1300.

## 2. Calculation of the Fee Award

Defendant HSF has prayed for an award of $14,136.05—$798.05 in costs and expenses and $13,338.00 (156 55/60 hrs. @ $85/hr.) in fees. Defendant GEH has requested an award of $15,756.59—$544.09 in costs and expenses and $15,212.50 (93.7 hrs. @ $75/hr. and 81.85 hrs. @ $100/hr.) in fees. Finally, defendant GSC has asked for a total of $5,962.45—$1,279.95 in costs and expenses and $4,682.50 (122.75 hrs. @ $30/hr. and 25 hrs. @ $40/hr.) in fees. The total amount defendants have requested is equal to $35,855.09.

Each defendant's counsel has submitted several affidavits indicating the exact number of hours spent in preparation of the defense in the instant case. After reviewing those affidavits, this Court finds the time expended by counsel to be reasonable and appropriate for the preparation of an adequate defense. The Court is aware of no duplication of billable hours by defendants' attorneys nor the inclusion of any nonchargeable hours in the number of hours requested. In adopting defendants' hours as a basis for calculation of a fee award, the Court considers plaintiff's vain efforts at prolonging this lawsuit. *See* copy of docket sheet attached hereto as Exhibit "A" showing the number of pleadings and Orders spawned by plaintiff. The Court will allow counsel for HSF to be compensated for 156 55/60 hours of service in defense of his client. Similarly, counsel for GEH will be awarded 175.55 hours of compensated time and counsel for GSC will be permitted 147.75 hours.

Defendants' counsel have requested varying rates to be used in the calculation of the lodestar amount. HSF's counsel asks for $85/hr., while counsel for GEH and GSC pray for bifurcated hourly rates of $75/hr. and $100/hr. and $30/hr. and $40/hr., respectively. There can be little dispute that attorney's fees may range any-where from $20 per hour to $300 per hour, depending on the location of the attorney's practice, the nature and complexity of the lawsuit and the experience of the attorney. The Court finds that the prevailing market price for legal services in civil rights actions in this community does not exceed $85/hr. The fees will be calculated, therefore, within that limit.

The presumptively reasonable rate-times-hours fee in this case equals $34,627.34. Defendant GEH urges this Court to enhance the amount owed to it by 50%. GEH has not, however, presented to this Court any specific evidence of a justification for a fee adjustment other than the fact GEH did not have a specific budget for dispensing compensation for legal services received. Pursuant to the dictates of the Supreme Court in *Blum v. Stenson, supra,* and *Hensley v. Eckerhart, supra,* this Court shall not enhance GEH's fee award.

Review of the remaining *Johnson* factors leads this Court to a similar result. Although recognizing that many of the factors may be subsumed indirectly in the lodestar calculation,[5] the Court nevertheless has reached the following findings of fact:

### Amount Involved and Results Obtained

Plaintiff sought damages in excess of $1,000,000 from defendants. The action was disposed of on summary judgment and the suit was found to be frivolous and without foundation in the law. In prevailing, defense counsel were both diligent and expeditious in securing an early termination of plaintiff's claim.

### Experience, Reputation and Ability of the Attorneys

All defendants' counsel proved themselves to be very competent attorneys who have a substantial amount of expertise in this area of the law.

---

Those factors, as listed in *Johnson,* are: (1) the time and labor required; (5) the customary fee; (8) the amount involved and the results obtained; and (9) the experience, reputation and ability of the attorneys. It may be, however, that these four factors are subsumed within the lodestar analysis developed by the recent Supreme Court decisions. *See supra* note 5.

**5.** *See supra* note 3.

### Novelty and Difficulty of the Questions

The issues presented involved neither complex factual findings of fact nor difficult or novel conclusions of law. The instant case developed no new legal theories or holdings.

### Skill Required to Perform the Legal Service Properly

Defendants' counsel have performed skillfully in preparing the necessary legal services for their clients. No unusual skill was required here.

### Preclusion of Other Employment

Defendants, in their motions for attorney's fees, presented no special circumstances with regard to this issue which requires an increase in the base amount already calculated.

### Whether the Fee is Fixed or Contingent

Defendants' counsel are compensated on an hourly rate. There was no contingency.

### Time Limitations

The case presented no special time limitations or pressures outside of the normal deadlines imposed by litigation.

### "Undesirability" of the Case

Defendants have presented no evidence indicating that this factor is relevant in the calculation of attorney's fees or costs.

### Nature and Length of the Professional Relationship with the Client

Again, defendants have put forth no evidence warranting an increase in the base calculation.

### Awards in Similar Cases

The award here comports with awards in other such cases.

### CONCLUSION

After considering the *Johnson* factors, the Court finds that there shall be no enhancement in the lodestar figure to defendant GEH. Costs included, this Court awards defendant HSF the sum of $14,-136.05; defendant GEH the sum of $14,-528.84; and, defendant GSC the sum of $5,962.45. The sum total of this award is $34,627.34.

Accordingly, defendants' motion for attorney's fees is GRANTED and the Clerk of Court is directed to enter an appropriate judgment.